[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-15078
Non-Argument Calendar
_____

Agency No. A206-454-240

JUAN JUAN-FELIPE,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(July 16, 2020)

Before WILSON, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

In this immigration case, Juan Juan-Felipe, a native and citizen of Guatemala, applied for relief from removal from the United States on the ground that he had been and likely would be persecuted in Guatemala due to his "membership in a particular social group." *See* 8 U.S.C. §§ 1158(b)(1)(A), 1101(a)(42)(A). The Board of Immigration Appeals ("BIA") determined that he was not eligible for asylum or withholding of removal because his proposed social group—young males targeted for their age and sex who expressly oppose gang practices and values and who wish to protect their family members against such practices—was not viable based on BIA precedent. Juan-Felipe now petitions this Court for review, arguing that his proposed group should qualify because young males in Guatemala are targeted due to the immutable characteristic of their sex.

We review the BIA's decision as the final agency judgment and "do not consider issues that were not reached by the BIA." *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016). We review factual findings under the substantial-evidence test. *Id.* Legal questions, including whether a proposed social group qualifies as a "particular social group" within the meaning of the INA, are reviewed *de novo*, with appropriate deference to the BIA's reasonable interpretation of the INA. *Id.* at 403–04.

The government has the discretion to grant asylum if the applicant establishes that he is a "refugee." 8 U.S.C. § 1158(b)(1)(A). A "refugee" is someone who is

unable or unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, *membership in a particular social group*, or political opinion."   8 U.S.C. § 1101(a)(42)(A) (emphasis added).   Similarly, an applicant for withholding of removal must establish that his "life or freedom would be threatened in th[e] country [of removal] because of [his] race, religion, nationality, *membership in a particular social group*, or political opinion."  8 U.S.C. § 1231(b)(3)(A) (emphasis added).

Because Congress did not speak to what constitutes a "particular social group" under the INA, we have deferred to the BIA's reasonable formulation of that term. *Gonzalez*, 820 F.3d at 404.  A "particular social group," in the BIA's formulation, has three defining characteristics: (1) immutability; (2) particularity; and (3) and social distinction.  *See id.*   Immutability means the group shares a common characteristic that is either immutable or fundamental to its members' individual identities or consciences.  *Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1196–97 (11th Cir. 2006).  Particularity means the group must "be discrete and have definable boundaries—it must not be amorphous, overbroad, diffuse, or subjective." *Gonzalez*, 820 F.3d at 404 (quotation marks omitted).  Finally, the proposed group must be "socially distinct within the society in question."  *Id.* (quotation marks omitted).  Importantly, "[t]he risk of persecution alone does not create a particular social group within the meaning of the INA."  *Castillo-Arias*, 446 F.3d at 1198.

In concluding that Juan-Felipe's proposed social group was not a "particular social group" entitled to protection under the INA, the BIA relied on two of its precedents, *Matter of S-E-G-*, 24 I. & N. Dec. 579, 588 (BIA 2008), and *Matter of A-B-*, 27 I. & N. Dec. 316, 335 (A.G. 2018).

In *Matter of S-E-G-*, the BIA rejected the proposed social group of "Salvadoran youths who have resisted gang recruitment." *See* 24 I. & N. Dec. at 582–83. In particular, the BIA concluded that the proposed group did not satisfy the "particularity" or "social distinction" standards. *See id.* at 584–88 (using the term "social visibility"). The BIA explained that the group lacked particularity because it was a "potentially large and diffuse segment of society," there was no "unifying relationship or characteristic to narrow this diverse and disconnected group," and "the motivation of gang members in recruiting and targeting young males could arise from motivations quite apart from any perception that the males in question were members of a class." *Id.* at 585 (quotation marks omitted). The group also lacked social distinction, according to the BIA, because there was no evidence "to indicate that Salvadoran youth who are recruited by gangs but refuse to join (or their family members) would be 'perceived as a group' by society, or that these individuals suffer from a higher incidence of crime than the rest of the population." *Id.* at 587. The BIA further noted that the risk of harm from gangs was not limited to young males who have resisted gang recruitment, "but affects all segments of the population,"

4

particularly those who resist the gang for any reason. *Id.* Accordingly, the BIA held that "that the proposed group, which consists of young Salvadorans who have been subject to recruitment efforts by criminal gangs, but who have refused to join for personal, religious, or moral reasons, fails the 'social visibility' test and does not qualify as a particular social group." *Id.* at 588.

In *Matter of A-B-*, the Attorney General added that "[s]ocial groups defined by their vulnerability to private criminal activity likely lack the particularity required . . . , given that broad swaths of society may be susceptible to victimization." 27 I. & N. Dec. at 335. The Attorney General noted that "[v]ictims of gang violence often come from all segments of society, and they possess no distinguishing characteristic or concrete trait that would readily identify them as members of such a group." *Id.*

Here, we agree with the BIA that Juan-Felipe is not a member of a "particular social group" that is cognizable under the INA. Members of Juan-Felipe's proposed group may share common, largely immutable characteristics, namely being young and male. But "sharing a common, immutable characteristic is a necessary, but not sufficient, condition to qualify as a particular social group under BIA precedent." *Gonzalez*, 820 F.3d at 405. And for the reasons explained by the BIA in the similar case of *Matter of S-E-G-*, Juan-Felipe's proposed social group—young males targeted for their age and sex who expressly oppose gang practices and values and

5

who wish to protect their family members against such practices—fails the "particularity" and "social distinction" tests.

The proposed group lacks particularity because its members make up a "potentially large and diffuse segment of society." *Matter of S-E-G-*, 24 I. & N. Dec. at 585. Juan-Felipe attempts to limit the scope of the group by narrowing it to young males who expressly oppose gang practices and values and who wish to protect their family members against such practices. These proffered limiting factors remain amorphous and subjective, however. And as the BIA noted in *Matter of S-E-G-*, "the motivation of gang members in recruiting and targeting young males could arise from motivations quite apart from any perception that the males in question were members of a class." *Id.*; *see Matter of A-B-*, 27 I. & N. Dec. at 335 ("Social groups defined by their vulnerability to private criminal activity likely lack the particularity required . . . , given that broad swaths of society may be susceptible to victimization."). For instance, the *Daily Mail* article Juan-Felipe submitted indicated that minors were recruited because gangs thought they would get preferential police treatment if caught.

Nor does the proposed group meet the standard of "social distinction." The putative members do not share a characteristic that would "generally be recognizable by others in the community." *Matter of S-E-G-*, 24 I. & N. Dec. at 586–87 (noting that although the applicants were victims of harassment, beatings, and threats from

6

gangs, "[t]here is little in the background evidence of record to indicate that Salvadoran youth who are recruited by gangs but refuse to join (or their family members) would be 'perceived as a group' by society, or that these individuals suffer from a higher incidence of crime than the rest of the population"); *see also Matter of E–A–G–*, 24 I. & N. Dec. 591, 594 (BIA 2007) ("Persons who resist joining gangs have not been shown to be part of a socially visible group within Honduran society . . . ."). Juan-Felipe's testimony and evidence did not show that young males opposing gang practices, wishing to protect their family from such, were somehow distinguished in Guatemalan society or were any more vulnerable to persecution by gangs than anyone else. As the BIA has explained, "victims of gang violence come from all segments of society, and it is difficult to conclude that any 'group,' as actually perceived by the criminal gangs, is much narrower than the general population of [Guatemala]." *Matter of S-E-G-*, 24 I. & N. Dec at 588. There is no evidence to show that members of the proposed social group are in "substantially different position from anyone who has crossed the gang, or who is perceived to be a threat to the gang's interests." *Id.* at 587.

In sum, the BIA did not err in concluding that Juan-Felipe's proposed social group was not cognizable as it was not defined with particularity or distinguished within Guatemalan society.

7

Juan-Felipe also challenges the immigration judge's findings that he failed to establish either past persecution or a reasonable fear of future persecution. But the BIA did not address these issues and denied Juan-Felipe's application for asylum and withholding of removal solely on the basis of the lack of a cognizable particular social group. Because the BIA did not reach these issues, we do not consider them. *See Gonzalez*, 820 F.3d at 403 ("We do not consider issues that were not reached by the BIA."). Finally, Juan-Felipe has abandoned any argument as to the BIA's denial of relief under the United Nations Convention Against Torture by failing to raise and argue that issue in his briefing. *See Chen v. U.S Att'y Gen.*, 463 F.3d 1228, 1229 n.1 (11th Cir. 2006) (issues not raised on appeal are abandoned).

For these reasons, we deny Juan-Felipe's petition for review.

**PETITION DENIED.**

8